**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 09-cv-01543-REB-KMT

LUCKEN FAMILY LIMITED PARTNERSHIP, LLLP, individually and as representative plaintiff on behalf of all others similarly situated,

    Plaintiff,

v.

ULTRA RESOURCES, INC.,

    Defendant.

---

**ORDER APPROVING CLASS SETTLEMENT
AND FOR ENTRY OF FINAL JUDGMENT
AND DISMISSAL WITH PREJUDICE
AND WITHOUT PREJUDICE**

---

**Blackburn, J.**

THIS MATTER comes before the Court on **Plaintiff's Unopposed Motion for Final Approval of Class Settlement And Approval of an Incentive Award for the Class Representative** [#75] filed August 20, 2010.[1] The court heard the motion on October 29, 2010. The Court, being fully advised of the premises of the Motion, FINDS:

    A.    On June 30, 2009, Plaintiff Lucken Family Limited Partnership, LLLP ("Plaintiff" or "Lucken") filed a class action complaint against Ultra Resources, Inc. ("Defendant" or "Ultra") in this Court. Ultra filed its answer on August 17, 2009, and on November 24, 2009, Ultra filed an amended answer. Shortly thereafter, the parties engaged in class certification briefing.

---

[1] The Court addresses the request for approval of an incentive award for the Class Representative in a separate order.

B. The parties' attorneys engaged in numerous discussions regarding the litigation and the possibility of a class settlement, and also participated in two mediation sessions before former Judge Richard Dana on March 10, 2010, and April 26, 2010. On May 3, 2010, the parties reported to the Court that they had reached a tentative agreement in principle to settle this case.

C. On May 12, 2010, the parties filed a joint notice informing the Court that they had reached agreement on the material terms of a settlement, and they moved to stay discovery and case management deadlines to allow the parties to finalize the settlement documents. The parties requested that the Court allow them to submit by June 7, 2010, a motion for approval of the settlement and for settlement class certification, and to stay the case until that time. On May 18, 2010, the Court granted the parties' request, and ordered them to file settlement papers by June 7, 2010. The filing deadline was later extended to June 18, 2010, subsequently to June 23, 2010, and finally to June 28, 2010.

D. On June 23, 2010, Plaintiff filed a Motion for Preliminary Approval of Settlement (the "Preliminary Motion") seeking preliminary approval of a settlement of certain claims, based on Ultra's alleged reporting violations, existing between Ultra and a "Reporting Class" defined as follows:

> "Reporting Class" means all individuals and entities to whom Ultra has paid since January 1, 2000 or currently is paying overriding royalties on Natural Gas produced by Ultra from the Pinedale Field in Sublette County, Wyoming, according to the business records maintained by Ultra. The Reporting Class excludes (i) Ultra and its predecessors and successors; (ii) the federal government; (iii) legally-recognized Indian Tribes; (iv) any person or entity that owns a working interest in any Pinedale Field well in which Ultra also owns a working interest; and (v) any person who serves as a judge in this civil action and his/her spouse. It is specifically agreed

> that the Reporting Class is comprised of and limited to those persons and entities listed on Exhibit A [to the Settlement Agreement].

E. The Preliminary Approval Motion further sought preliminary approval of a settlement of certain claims, based on Ultra's alleged underpayment of royalties, existing between Ultra and an "Underpayment Class" defined as follows:

> "Underpayment Class" means all persons and entities whose overriding royalty interest payments on Natural Gas produced by Ultra from the Pinedale Field were based on an overriding royalty interest which (a) was created on or after July 1, 1989 (the effective date of the [Wyoming Royalty Payment Act's] Costs of Production provisions) or any assignment(s) of such overriding royalty interest, and (b) is not subject to an executed written agreement that contains specific language expressly permitting Ultra to deduct Costs of Production when calculating its overriding royalty payments. The Underpayment Class excludes (i) Ultra and its predecessors and successors; (ii) the federal government; (iii) legally-recognized Indian Tribes; (iv) any person or entity that owns a working interest in any Pinedale Field well in which Ultra also owns a working interest; and (v) any person who serves as a judge in this civil action and his/her spouse. It is specifically agreed that the Underpayment Class is comprised of and limited to those persons and entities listed on Exhibit B [to the Settlement Agreement]. Some members of the Underpayment Class own or may have owned overriding royalty interests that fall within this definition and other overriding royalty interests that do not; such persons and entities are included in the Underpayment Class only as to their overriding royalty interests that fall within this definition.

F. Attached as Exhibit "1" to the Preliminary Approval Motion is a settlement agreement (the "Agreement") describing the claims that are being settled on behalf of the Reporting Class (defined as the "Settled Reporting Claims"), describing the claims that are being settled on behalf of the Underpayment Class (defined as the "Settled Underpayment Claims"), setting forth the terms of the Parties' settlement, and incorporating the terms of this Final Judgment And Dismissal With Prejudice And Without Prejudice (the "Final Judgment"). The Agreement is attached hereto as Exhibit

1 and its terms, including the definitions, are incorporated into this Final Judgment as if fully set forth herein.  The Agreement and Final Judgment shall be referred to collectively herein as the "Settlement."

G.      After a hearing on the Parties' Preliminary Approval Motion, this Court entered an Order dated June 30, 2010 (the "Preliminary Approval Order") preliminarily approving the Settlement and directing that notice of the proposed Settlement be mailed to the Settlement Class.  The Court also set a hearing for October 29, 2010, to determine whether the proposed Settlement should be approved as fair, reasonable and adequate.

H.      In accordance with the Court's Preliminary Approval Order, Ultra caused to be mailed to potential members of the Settlement Class (for whom Ultra had addresses available from its accounting records) the Settlement Notice in the form approved by the Court in the Preliminary Approval Order.  Attached as Exhibit A to the Memorandum in Support of Plaintiff's Unopposed Motion for Final Approval of Class Settlement ("Final Approval Memorandum") is the Affidavit of Teresa H. Brandon which provides additional information concerning the mailing of notice.  The Court finds that the Settlement Notice provided to potential members of the Settlement Class constituted the best and most practicable notice under the circumstances and included individual notice to all members of the Settlement Class who could be identified by reasonable efforts, thereby complying fully with due process and Rule 23 of the Federal Rules of Civil Procedure.

I.      Ultra also caused to be mailed to the appropriate federal and state officials the materials required to be submitted by the Class Action Fairness Act, 28 U.S.C. §

1711, et seq. ("CAFA").  The actions taken to comply with CAFA's notice requirements are more particularly described in the Affidavit of David R. Hammond attached to the Final Approval Memorandum as Exhibit B.  Accordingly, the Court finds that the notice requirements of the Class Action Fairness Act regarding state and federal officials have been satisfied.

      J.      On October 29, 2010, the Court held a hearing on the proposed Settlement, at which time all interested persons were given an opportunity to be heard. Furthermore, the Court has read and considered all submissions in connection with the Settlement.  Having done so, the Court has determined that approval of the Settlement will bestow a substantial economic benefit on the Settlement Class, result in substantial savings in time and money to the litigants and the Court and will further the interests of justice, and that the Settlement is the product of good-faith arm's length negotiations between the Parties under the supervision of former Judge Richard W. Dana of the Judicial Arbiter Group in Denver, Colorado, a respected, qualified, and impartial mediator.

**NOW, THEREFORE, GOOD CAUSE APPEARING, IT IS ORDERED, ADJUDGED, AND DECREED** as follows.

      1. The **Plaintiff's Unopposed Motion for Final Approval of Class Settlement And Approval of an Incentive Award for the Class Representative** [#75] filed August 20, 2010, is granted.

      2.      The Agreement, including all of the terms defined therein, including but not limited to the definitions of "Settled Reporting Claims" and "Settled Underpayment

Claims," is incorporated herein. Any terms used in this Final Judgment are governed by their definitions in the Agreement. The Court has jurisdiction over the subject matter of this litigation and all parties to this litigation, including all members of the Settlement Class.

3. The certified Reporting Class and the certified Underpayment Class are defined for purposes of the Agreement and this Final Judgment as set forth in Paragraphs D and E above; except that Exhibit A to the Settlement Agreement is deemed amended to include the Roy H. Dubitzky Trust, which was inadvertently omitted from the list of Reporting Class Members set forth in Exhibit A to the Settlement Agreement (Exhibit 1 to this Final Judgment), as a member of the Reporting Class.

4. The Settlement was made in good-faith and its terms are fair, reasonable, and adequate as to the Settlement Class. Therefore, the Settlement is approved in all respects, and shall be binding on and inure to the benefit of all members of the Settlement Class.

5. The Reporting Class Excluded Entities and the Underpayment Class Excluded Entities (collectively, the "Settlement Class Excluded Entities") are not bound by either the Agreement or this Final Judgment. The persons and entities identified on Exhibit 2 to this Final Judgment are Settlement Class Excluded Entities. The Settlement Class Excluded Entities may pursue their own individual remedies, if any, as to any of the Settled Reporting Claims and/or the Settled Underpayment Claims.

6. Releases.

   a. <u>Release by Reporting Class Members</u>. On the occurrence of the Effective Date and the release of the Settlement Funds from the Escrow Account

pursuant to paragraph 8 below, the Reporting Class Members, and each of them, for themselves and their respective heirs, agents, officers, directors, shareholders, employees, consultants, joint venturers, partners, members, legal representatives, successors and assigns, fully and forever release and discharge Ultra from the Settled Reporting Claims, except for the rights and obligations created by the Agreement.

    b. <u>Release by Underpayment Class Members</u>.  On the occurrence of the Effective Date and the release of the Settlement Funds from the Escrow Account pursuant to paragraph 8 below, the Reporting Class Members, and each of them, for themselves and their respective heirs, agents, officers, directors, shareholders, employees, consultants, joint venturers, partners, members, legal representatives, successors and assigns, fully and forever release and discharge Ultra from the Settled Underpayment Claims, except for the rights and obligations created by the Agreement.

    c. <u>No Release of Non-Parties</u>.  Nothing herein shall operate or be construed to release any claims the Parties may have against any person or entity who is not a Party hereto.

  7. All Settled Reporting Claims are dismissed with prejudice; all Settled Underpayment Claims are dismissed with prejudice; and all remaining claims which were alleged or could have been alleged by Plaintiff in this case are dismissed without prejudice.

  8. Neither this order for final judgment, the Agreement, nor any document referred to herein nor any action taken pursuant to-or to carry out-the Settlement may be used as an admission by or against Ultra of any fact, claim, assertion, matter, contention, fault, culpability, obligation, wrongdoing or liability whatsoever.

9. Allocation of the Settlement Funds shall proceed as follows:

a. The Plan of Administration attached as Exhibit G to the Agreement, including the plans for allocation and distribution set forth therein, is approved and shall be implemented by using the best reasonably available data and using the most practicable method under the circumstances.

b. The Parties acknowledge that, by operation of subparagraph 5.1.1 of the Agreement, the amount of the Settlement Funds has been reduced by $11,160.70, which is the aggregate amount of the Settlement Funds attributable under the Plan of Allocation to the Settlement Class Excluded Entities identified in Paragraph 4 above.

c. Ultra is not liable for the allocation of the Settlement Funds beyond the act of distributing the payments in accordance with the terms of this Settlement. Any omissions from, errors in, or challenges to the allocation shall in no way whatsoever result in an increase of the Settlement Funds paid by Ultra.

d. <u>Future Royalty Calculation Method</u>.  For Overriding Royalties paid to the Underpayment Class Members on or after August 1, 2010, on Natural Gas produced from the Pinedale Field, Ultra (and its successors and assigns) shall not make any deductions or adjustments for any Costs of Production when calculating the Overriding Royalties due to the Underpayment Class Members (and their successors and assigns).  It is acknowledged and agreed specifically that Ultra shall, among other things, and without limitation, not make any deductions for any costs or charges incurred, directly or indirectly, for dehydration, gathering, treating, compressing, or any other operations and activities occurring between the wellhead and the inlet of a

processing plant. It is recognized that some Costs of Production are incurred through the use, consumption, or loss of Natural Gas, including Fuel and Other Lost Volumes. In order to account for same and ensure that such Costs of Production are not imposed on the Underpayment Class Members, Ultra shall, with regard to Overriding Royalty interests owned by Underpayment Class Members, (and in addition to paying Overriding Royalties on Natural Gas that is sold), pay Overriding Royalties on the value of the Fuel and Other Lost Volumes as set forth in this subparagraph. First, to determine the volume of the Fuel and Other Lost Volumes attributable to an individual Underpayment Class Member's Overriding Royalty, Ultra will subtract the amount (MMBtu) of Natural Gas attributable to a particular Overriding Royalty that is delivered to the inlet of a gas processing plant and/or delivered to the inlet of a Transmission Pipeline in a particular month from the amount (MMBtu) produced during the same month with regard to the same Overriding Royalty. The resulting volume (MMBtu) shall be considered the volume of Fuel and Other Lost Volumes attributable to a particular Overriding Royalty for the particular month. To determine the value of the Fuel and Other Lost Volumes for that month, that volume shall be multiplied by the same weighted average price (per MMBtu) that Ultra uses for the calculation of the non-Fuel and Other Lost Volumes portion of a particular Overriding Royalty. The resulting value will then be adjusted, as appropriate, for those specific circumstances where the instrument creating the particular overriding royalty interest expressly permits the deduction of Fuel and Other Lost Volumes in whole or in part. In addition to the matters reported under subparagraph e, below, Ultra will report to the Underpayment Class Members the value of the Fuel and Other Lost Volumes on which Overriding Royalties

are being paid pursuant to this subparagraph d.

   e. <u>Check Stubs</u>.  Ultra shall comply fully with the reporting requirements of WRPA §30-5-305(b), which provides as follows:

> (b) Whenever payment is made for oil or gas production to an interest owner, all of the following information shall be included and labeled on the check stub or on an attachment to the form of payment, unless the information is otherwise provided on a regular monthly basis:
>  (i) The lease, property or well name or any lease, property or well identification number used to identify the lease property or well;
>  (ii) The month and year during which sales occurred for which payment is being made;
>  (iii) The total number of barrels of oil or thousands of cubic feet of gas sold;
>  (iv) The price per barrel of oil or the price per thousand cubic feet of gas;
>  (v) The total amount of state severance, ad valorem and other production taxes;
>  (vi) An itemized list of any other deductions or adjustments;
>  (vii) The net value of total sales after deductions;
>  (viii) The owner's interest in sales from the lease, property, or well expressed as a decimal;
>  (ix) The owner's share of the total value of sales prior to any deductions;
>  (x) The owner's share of the sales value less deductions; and
>  (xi) An address where additional information pertaining to the owner's interest in production may be obtained and questions answered.  If information is requested by certified mail, an answer must be mailed by certified mail within thirty (30) days of receipt of the request.

  10. The Court has, by separate order, granted Class Counsel's "Motion for an Award of Attorneys' Fees and Expenses and for an Incentive Award Payment to Class Representatives." The amount of attorney fees and litigation expenses awarded to Class Counsel shall be distributed to Class Counsel from the Escrow Account pursuant to the terms of the Escrow Agreement and within seven calendar days after the date of the entry of judgment pursuant to this order. If the judgment entered pursuant to this order is reversed on appeal, Class Counsel shall be jointly obligated to refund to Ultra

the amount of attorney fees and litigation expenses paid, with statutory interest, within 15 days of the date of such appellate order or mandate of reversal.  If the amount of attorney fees or litigation expenses is reduced on appeal, Class Counsel and their law firms shall be jointly obligated to refund to the Escrow Account the difference between the amount paid to them pursuant to this paragraph and the amount ultimately awarded, with statutory interest, within 30 days of the date of the order or decision reducing the amount of fees or expenses awarded.  Ultra shall have no liability to the Settlement Class, the Settlement Class Members, or Class Counsel to pay any funds in addition to the Settlement Funds paid.

11.     The Court reserves jurisdiction over this matter, the Parties, and all counsel herein, without affecting the finality of any final judgment entered pursuant to this order, including over (a) implementing, administering and enforcing this Settlement and any award or distribution from the Settlement Funds; (b) disposition of the Settlement Funds; and (c) other matters related or ancillary to the foregoing.

12.     Nothing set forth in this order or the judgment entered pursuant to this order shall be construed to modify or limit the terms of the Agreement, but rather, the Agreement and this order, and the final judgment entered pursuant to this order are to be construed together as one Settlement between the Parties.

13.     The Settlement, this order, and the judgment entered pursuant to this order shall have no res judicata, collateral estoppel, or other preclusive effect as to any claims other than the Settled Reporting Claims and Settled Underpayment Claims.

14.     The clerk of the court shall enter judgment consistent with and pursuant to this order.

Dated November 4, 2010, at Denver, Colorado.

**BY THE COURT:**

_/s/ Bob Blackburn_
Robert E. Blackburn
United States District Judge