IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 09-cv-01543-REB-KMT

LUCKEN FAMILY LIMITED PARTNERSHIP, LLLP, individually and as representative
plaintiff on behalf of all others similarly situated,

      Plaintiff,

v.

ULTRA RESOURCES, INC.,

      Defendant.

---

## ORDER TO AMEND JUDGMENT

**Blackburn, J.**

      The matter before the court is the parties' **Joint Motion for Entry of Order** [#82]
filed December 21, 2010.  The parties advise that although I granted **Plaintiff's
Unopposed Motion for Final Approval of Class Settlement and Approval of an
Incentive Award for the Class Representative** [#75] filed August 20, 2010 (*see* **Order
Approving Class Settlement and for Entry of Final Judgment and Dismissal with
Prejudice and Without Prejudice** [#80] filed November 4, 2010), the judgment does
not make provision for the requested incentive award.  Moreover, the parties point out
that the court has never ruled on **Class Counsel's Unopposed Motion for Attorneys'
Fees and Expenses** [#76] filed August 20, 2010.  This order rectifies those oversights.

      I have considered the apposite motions and briefs, as well as the argument
previously presented at the final approval hearing on October 29, 2010.  Defendant
Ultra Resources, Inc. ("defendant" or "Ultra") has taken no position with regard to class

counsel's motion for attorney fees and expenses or class counsel's request for approval

of an incentive award to the class representative.

### *FINDINGS OF FACT AND CONCLUSIONS OF LAW*

Based on the foregoing, the court finds and concludes as follows:

1.    Pursuant to the Settlement Agreement between plaintiff Lucken Family

Limited Partnership, LLLP ("plaintiff" or "Lucken") and Ultra, the parties agree to resolve

the class members' claims regarding Ultra's royalty reporting and underpayment

practices allegedly in violation of the Wyoming Royalty Payment Act ("WRPA").

Specifically, the parties agree to resolve:  (1) the Reporting Class members' claims

against Ultra for Ultra's alleged failure to comply with the disclosure requirements

imposed by W.S. § 30-5-305(b); and (2) the Underpayment Class members' claims

against Ultra for Ultra's alleged underpayment of royalties pursuant to W.S. §

30-5-304(a).  The parties agree to settle the Reporting Class claims for $824,000 and

the Underpayment Class claims for $3,176,000.  After taking into account an opt-out

credit to which Ultra is entitled because of the election of certain class members to

exclude themselves from the settlement, the net settlement fund, before subtraction of

litigation expenses, is $3,988,842.66.

2.    In addition to the net settlement fund payment, the Settlement Agreement

also requires Ultra prospectively to change its royalty reporting and calculation methods

to comply with the WRPA.  In June 2010, Ultra changed its reporting practices to ensure

compliance with the reporting requirements of the WRPA by including on its check stubs

the information that W.S. § 30-5-305(b) requires to be disclosed.  Furthermore, effective

with the overriding royalty checks for August 31, 2010, Ultra changed its method for

2

calculating royalties for the Underpayment Class so that the "Costs of Production," as defined by W.S. § 30-5-304(a), are not imposed on those royalty owners, but rather are paid by Ultra.  Class counsel presented expert testimony that the present value of Ultra's new method for calculating royalties is approximately $7,056,726.  (**Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses** App., Exh. 1, Affidavit of Oscar Hartman ("Hartman Aff.") ¶ 11 [#76], filed August 20, 2010.)

3.      The total economic value of the Class Settlement to the Settlement Class members – comprised of the Net Settlement Fund amount plus the present value to the Class Members of Ultra's royalty calculation methodology change – is approximately $11,045,569, hereafter referred to as the "Common Fund."

4.      Class counsel request reimbursement of $130,650.16 for litigation expenses.  This includes $118,150.16 for litigation expenses that Class counsel already incurred, as well as $12,500.00 in additional litigation expenses that Class counsel expect to incur in the further handling of this litigation and settlement administration.

5.      The court finds that the litigation expenses for which class counsel seek reimbursement have been reasonably incurred by class counsel in the prosecution of this litigation, and that the estimated future expenses will be reasonably incurred in the further handling of this litigation by class counsel.  The court therefore approves class counsel's request for $130,650.16 in litigation expenses.

6.      The Settlement Agreement creates a "Common Fund" for payments to the Settlement Class members comprised of the Settlement Fund and the present value of

Ultra's new method for calculating royalties.  The Common Fund created – including the initial payment and additional payments under the new royalty calculation methodology – is approximately $11,045,569.

7.      Class counsel request an award of attorneys' fees in the amount of $1,289,783.28, which is approximately 11.68% of the Common Fund.

8.      In class action lawsuits in which a fund is created for the benefit of the class, either through settlement or a judgment on the merits, the common fund doctrine is used as a method for proportionately spreading payment of attorney fees among the class members.  *Gottlieb v. Bany*, 43 F.3d 474, 482 (10th Cir. 1994).  In *Gottlieb*, the Tenth Circuit recognized that the prevailing trend in awarding attorney fees in common fund cases is to award fees based on a percentage of the common fund obtained for the benefit of the class.  *Id.*; *see also Anderson v. Merit*, 2009 WL 3378526 at *2 (D. Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created").

9.      The common fund doctrine is an equitable remedy that awards fees to attorneys for their advocacy and for the benefit of others.  It is grounded in equitable principles of *quantum meruit* and unjust enrichment.  Unlike statutory fees, which result in a shifting of the fee burden to the losing party, common fund fees result in a sharing of the fees among those benefitted by the litigation.  *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1998).  The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund "is less subjective than the lodestar plus multiplier approach," matches the

4

marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis, as in  this case. *Id.* at 484.  ***See also Uselton v. Commercial Lovelace Motor Freight, Inc.***, 9 F.3d 849, 853 (10th Cir. 1993).

10.   The total Common Fund is approximately $11,045,569.  Class counsel's request that the court award attorney fees of $1,289,783.28.  The requested fee equals only 11.68% of the Common Fund.  It equals approximately 33⅓% of the sum of the payments from the Net Settlement Fund to the Reporting Class and the Underpayment Class payment, net of expenses.  Class counsel's fee request is in accordance with attorney fees awards that have been approved in similar class action cases, including cases in Colorado.

11.   The Tenth Circuit has held that the factors articulated by the Fifth Circuit in ***Johnson v. Georgia Highway Express, Inc***., 488 F.2d 714, 717-19 (5th Cir. 1974), should be considered in reviewing the reasonableness of the percentage of the common fund awarded to class counsel for attorneys' fees:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee - this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

***Brown***, 838 F.2d at 454-55; ***see also Merit***, 2009 WL 3378526 at *2.

12.   The weight to be given to each of the ***Johnson*** factors varies from case to case, and each factor is not always applicable in every case.  In a common fund case,

5

the greatest weight should be given to the monetary results achieved for the benefit of the class – this factor is often "decisive." *Brown*, 838 F.2d at 456.

13.     "Numerous courts have recognized that in evaluating the various *Johnson* factors, the greatest weight should be given to the monetary results achieved for the benefits of the class." *Merit*, 2009 WL 3378526, at *4; *see also Brown*, 838 F.2d at 456 ("[T]he amount involved and the results obtained may be given greater weight when . . . the recovery was highly contingent and the efforts of counsel were instrumental in realizing recovery on behalf of the class.").  In this case, class counsel obtained an outstanding result for the Settlement Class:  from the retrospective relief alone, class members will receive more than 80% of their damages, which is an excellent recovery by any standard.  These results strongly support the requested attorney fees.

14.     Class counsel's lodestar – which is calculated by multiplying the hours worked on the litigation by the hourly rates of the attorneys and legal assistants – is $710,527.00.  (**Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses** App., Exh. 1, Affidavit of Larry D. Moffett ("Moffett Aff.")) ¶ 13 [#76], filed August 20, 2010.)  The requested fee award of $1,289,783.28 represents a lodestar multiplier of 1.82.  This multiplier of class counsel's lodestar is lower than lodestar multipliers that federal courts consistently have approved in other class action cases. *See, e.g.*, *Miniscribe Corp. v. Harris Trust Co. of California*, 309 F.3d 1234, 1245 (10th Cir. 2002) (affirming fee award based on a lodestar multiplier of 2.57); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (lodestar multiplier of 3.65 in the

cross-check analysis was reasonable); ***Lucas v. Kmart Corp.***, 2006 WL 2729260 at *9

(D. Colo. July 27, 2006) (lodestar multiplier of 1.87 in the cross-check analysis was

reasonable).

15.     The work class counsel have performed in this complex litigation has been

substantial.  Among other things, class counsel:  (a) comprehensively reviewed

thousands of pages of documents and electronic data supplied by Ultra and Ultra's third

party purchasers/processors; (b) evaluated many overriding royalty agreements, to

determine which overriding royalty owners are members of the defined Settlement

Class, and which are not; (c) investigated Ultra's marketing arrangements, overriding

royalty calculations, and overriding royalty payments for natural gas production for the

relevant class period; (d) worked extensively with experts throughout the litigation; (e)

briefed the class certification issue, including engaging in discovery for that purpose; (f)

undertook a detailed analysis of Ultra's overriding royalty accounting data for the

purposes of having plaintiff's accounting expert prepare a damage estimate that was

used during the settlement negotiations; (g) worked with the named plaintiff to collect

relevant information; (h) participated in numerous discussions and meetings regarding

settlement, including mediation sessions in Denver, Colorado before Judge Richard

Dana, former Chief Judge of the Twentieth Judicial District in Colorado; (i) engaged in

numerous telephone discussions and meetings with many settlement class members,

and answered all questions directed to class counsel by the class members; and (j)

prepared various memoranda and exhibits relating to preliminary approval and final

approval.  (Moffett Aff. ¶ 12.)

16.     The court finds that the multiplier of class counsel's lodestar, which is

much lower than lodestar multipliers that federal courts have consistently approved in other class action cases, further supports class counsel's request for an award of attorney fees in the amount of $1,289,783.28.

17.     As this court found in its June 30, 2010 Order preliminarily approving the class settlement, this case involves "[s]ufficient disputed questions of law and material fact . . . to make the outcome of a trial on the merits uncertain."  (**Order Granting Certification of Settlement Class and Preliminary Approval of Class Settlement** at 5 [#70], filed June 30, 2010.)  Ultra challenged class certification and its liability at the outset.  Only after full class certification briefing and mediation under the guidance of Judge Dana did class counsel persuade Ultra that it was subject to the reporting and payment requirements of the WRPA, that Ultra failed to disclose in its check stubs to class members the disclosures mandated by W.S. § 30-5-305(b), and that, with respect to overriding royalty interests created after the 1989 enactment of the WRPA "Costs of Production" provisions, Ultra wrongly imposed such costs on royalty owners in violation of W.S. § 30-5-304(a).

18.     Class counsel's ability to handle the class action litigation properly, as well as class counsel's experience, reputation, and abilities, are additional ***Johnson*** factors that should be considered in the determination of an attorneys' fee award.  As this court held in its June 30, 2010 Order, "[t]he parties and their attorneys . . . are very experienced in class action royalty underpayment litigation," and Ultra "benefits from the agreement through the avoidance of protracted and expensive litigation, the final resolution of disputes with the Settlement Class members, and the promotion of a

mutually productive business relationship with the Settlement Class members." (**Order Granting Certification of Settlement Class and Preliminary Approval of Class Settlement** at 6 [#70], filed June 30, 2010.)  Each of the class counsel firms has extensive experience litigating royalty underpayment cases and other large, complex cases, in Colorado and other jurisdictions.  (Moffett Aff. ¶ 4.)  Class counsel's knowledge and experience significantly contributed to the excellent terms the settlement class members received.

19.    Class counsel worked hard to obtain an outstanding result for plaintiff and the settlement class, largely without the need for the court to intervene.  Because of the number of hours that class counsel have been required to devote to this case, class counsel necessarily were precluded from handling other litigation matters during that time.  (Moffett Aff. ¶ 11.)

20.    The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.  ***See, e.g.***, ***Merit***, 2009 WL 3378526 at *3 ("The customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class."); ***Lucas***, 2006 WL 2729260 at *6 (describing the "customary fee award" as "30% of the fund under the percentage of the fund approach") (citing 4 Robert Newberg, *Newberg on Class Actions* § 14:6 at 551 (4th ed. 2002)); ***Vaszlavik v. Storage Technology Corp.***, 2000 U.S. Dist. LEXIS 21140, at *10 (D. Colo. March 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and that "[a] 30% common fund award is in the middle of the ordinary

20%-50% range and is presumptively reasonable"); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40%o of any amount recovered are common in complex and other cases taken on a contingent fee basis," and 'attorneys' fees of 33 1/3% of the common fund . . . [are] consistent with prevailing case law in this circuit."). Here, class counsel's requested fees are approximately 11.68% of the Common Fund, which – as the *Vaszlavik* court held – is "presumptively reasonable."

21.    The attorney fees requested in this case are consistent with the percentages of settlement funds that have been approved by Colorado courts, including in royalty underpayment cases.  In *Merit*, the court awarded attorney fees of $5,900,000, or approximately 26% of the total economic value of the settlement, including the present value of the future benefits resulting from the defendant's changes to its method for calculating future royalties. *Merit*, 2009 WL 3378526 at *2. *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249-50 (S.D. Ohio 1991) ("The percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created.").  Class counsel also provided the court with numerous examples in which other courts awarded fees to class counsel in excess of the modest 11.68% of the Common Fund that has been requested in this case.  Class counsel's request for attorney fees in this case is in accordance with attorney fee awards to class counsel in similar complex class action cases.

22.    Based on the foregoing, the court finds that an analysis of the relevant *Johnson* factors and a lodestar cross-check confirms that an award of attorney fees to

class counsel of approximately 11.68% of the Common Fund, after subtraction of reasonable litigation expenses, is reasonable and appropriate.

23.     Class counsel additionally request approval of a $10,000 incentive award payment to class representative Lucken.

24.     Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class.  *See, e.g.*, *In re U.S. Bancorp Litigation*, 291 F. 3d 1035, 1038 (8th Cir.) (approving incentive award of $2,000 to each plaintiff where settlement fund was $3 million), *cert. denied*, 537 U.S. 823 (2002); *Cook v. Niedert*, 142 F. 3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000 for named plaintiff where settlement was valued at $13 million).

25.     The requested incentive award of $10,000 is only 0.09% of the total value of the Common Fund, which is estimated at $11,045,569.

26.     The court finds that this is well within the range of reasonable incentive awards.  *See, e.g.*, In *re Mego Financial Corp. Securities Litigation*, 213 F. 3d 454, 463 (9th Cir. 2000) (approving $5,000 incentive award to each plaintiff where settlement was valued at $1.75 million); *Enterprise Energy*, 137 F.R.D. at 251 (approving incentive award totaling $300,000 to class representatives out of a settlement fund of $56.6 million, which was 0.56% of the common fund).

27.     The factors to consider in determining an incentive award include:  (1) the actions that the class representative took to protect the interests of the class; (2) the degree to which the class has benefited from those actions; and (3) the amount of time

and effort the class representative expended in pursuing the litigation. *Cook*, 142 F.3d at 1016.

28.     When the above-referenced factors are applied to this case, the requested incentive award is justified.  Among other things, Lucken devoted significant time and effort to the litigation, provided responsive documents and information, and provided other substantial assistance to class counsel.  (Moffett Affidavit ¶ 10.)  The class representative should be rewarded for its assistance to the Settlement Class.

29.     The incentive award that class counsel has requested is fair, appropriate, reasonable, and consistent with the incentive awards approved by courts in other cases.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the parties' **Joint Motion for Entry of Order** [#82] filed December 21, 2010, is **GRANTED**;

2.  That **Plaintiff's Unopposed Motion for Final Approval of Class Settlement and Approval of an Incentive Award for the Class Representative** [#75] filed August 20, 2010, is **GRANTED** insofar as it seeks an incentive award for the class representative;

3.  That class representative Lucken is **AWARDED** an incentive award in the requested amount of $10,000;

4.  That **Class Counsel's Unopposed Motion for Attorneys' Fees and Expenses** [#76] filed August 20, 2010, is **GRANTED**;

5.  That class counsel are **AWARDED** $130,650.16 for litigation expenses that they have incurred and reasonably expect to incur through the conclusion of this

litigation;

6.   That class counsel are **AWARDED** attorney fees in the requested amount of

$1,289,783.28, plus accrued interest; and

7.   That the **FINAL JUDGMENT** [#81] filed November 5, 2010, shall be

**AMENDED** to include the addition of the following paragraphs following paragraph 12 at

page 11 of the judgment:

"13.   That class counsel are **AWARDED** $130,650.16 for litigation

expenses that they have incurred and reasonably expect to incur through

the conclusion of this litigation.

14.   That class counsel are **AWARDED** attorney fees in the requested

amount of $1,289,783.28, plus accrued interest.

15.   That class representative Lucken is **AWARDED** an incentive award in

the requested amount of $10,000."

Dated December 22, 2010, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge